# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RUFUS EDWARD JONES, # N-26349,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **vs.** | **)** | **Case No. 13-cv-00650-JPG** |
| | **)** | |
| **ST. CLAIR COUNTY, IL.,** *et al.*, | **)** | |
| | **)** | |
| **Defendants.** | **)** | |

## <u>MEMORANDUM AND ORDER</u>

**GILBERT, District Judge:**

Plaintiff, who is currently incarcerated at Western Illinois Correctional Center ("Western"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 (Doc. 1). Plaintiff's claims arose while he was on parole after his release from prison in 2012.  He claims that Defendants violated his rights under the First, Fourth, Fifth, and Fourteenth Amendments by racially profiling him, expelling him from school, conspiring to unlawfully arrest him, and denying him due process and equal protection of the law (Doc. 1, p. 2).  He asserts state law claims for intentional infliction of emotional distress (Doc. 1, pp. 11-12).   Plaintiff seeks compensatory and punitive damages, as well as declaratory judgment (Doc. 1, pp. 32-36).

## <u>The Complaint</u>

Specifically, Plaintiff alleges after an April 2, 1992, arrest, he was convicted and sentenced in St. Clair County, Illinois,[1] to consecutive thirty- and ten-year prison terms for home invasion and robbery, respectively (Doc. 1, pp. 3, 10).  After serving twenty years in the Illinois Department of Corrections ("IDOC"), Plaintiff was released on parole on April 2, 2012.  Prior to his release, Plaintiff had no pending warrants for his arrest (Doc. 1, p. 10).

---

[1]  All events giving rise to this action occurred in Illinois.

### 1.  Plaintiff's 2012 Unlawful Arrests

On September 6, 2012, three officers from the Sparta Police Department showed up at Plaintiff's home while he was outside checking his mailbox (Doc. 1, p. 10).  The officers, led by Defendant Lukes, served Plaintiff with a letter from Southwestern Illinois College – Red Bud Campus ("SWIC - Red Bud").  The letter banned Plaintiff from attending "all schools" (Doc. 1, pp. 10-11).

Defendant Lukes then told Plaintiff that he had more bad news.  Defendant Lukes informed Plaintiff that he had received instructions to arrest Plaintiff on a 2009 St. Clair County warrant for transporting open alcohol and failing to wear a seatbelt (Doc. 1, p. 11).  Plaintiff and his wife explained that this could not be.  Plaintiff had been in prison for the past twenty years. He did not even obtain a driver's license until April 2012.

Nevertheless, Plaintiff was arrested and transported to the Sparta Police Department without being read his *Miranda* rights.  Defendant Lukes held Plaintiff in a cell for twenty minutes.  After confirming that Plaintiff was incarcerated in 2009, Defendant Lukes released him (Doc. 1, p. 24).

Just nine hours later, Defendant Lukes and two other officers returned to Plaintiff's home.  Defendant Lukes informed Plaintiff that he was being placed under arrest, this time on two battery charges (Doc. 1, p. 25).  Defendant Lukes transported Plaintiff to the Sparta Police Department, where he was held until Defendant Brittingham, a City of Red Bud detective, arrived.  Once again, Defendant Lukes failed to read Plaintiff his *Miranda* rights.

Upon his arrival, Defendant Brittingham attempted to coerce Plaintiff into signing a false confession, by resorting to name-calling and racial slurs (Doc. 1, p. 23).  When Plaintiff refused to sign the confession, Defendant Brittingham transported him without a warrant to Randolph County Jail to post bail, which Plaintiff posted (Doc. 1, p. 12).

On September 12, 2012, Defendant Walker, Randolph County's prosecuting attorney, filed a complaint against Plaintiff for two counts of battery (Doc. 1, p. 27).  On October 15, 2012, Plaintiff filed a motion for a speedy trial, to quash a warrant, and for dismissal.  On December 26, 2012, Defendant Walker filed an additional aggravated battery charge against Plaintiff and threatened him with an extended term should he be convicted.  Afraid of being railroaded, Plaintiff pled guilty to the aggravated battery charge, and the remaining charges were dropped.  Plaintiff was re-committed to prison on orders of his parole officer on September 13, 2012 (Doc. 1, p. 28).

### 2.  Plaintiff's Past Unlawful Arrests

Plaintiff now alleges that these unlawful arrests were two in a series of unlawful arrests he has endured since 1978 (Doc. 1, p. 11).  In 1978, Plaintiff was arrested and charged with home invasion, aggravated criminal sexual assault, and robbery (Doc. 1, p. 12).  Plaintiff was convicted as an adult.  The Illinois Supreme Court dismissed all but the burglary charges in 1981 and ordered Plaintiff's immediate release.  Plaintiff was again unlawfully arrested and charged with aggravated criminal sexual assault and kidnapping in 1984.  Both of these charges were also dismissed.

### 3.  Plaintiff's Letter from SWIC–Red Bud

Plaintiff alleges that the SWIC–Red Bud letter, and the attendant battery charges, resulted from a conspiracy to discriminate against him.  After the events set forth above transpired, Plaintiff learned that Defendant Welten, a student at SWIC, made false reports against Plaintiff (Doc. 1, p. 15).  She claimed that Plaintiff sexually harassed her and carried a gun in his laptop case to school (Doc. 1, p. 22).  Defendant Brittingham, a detective and acquaintance of Defendant Welten, obtained two false statements from Defendant Welten and helped her file a false police report.  Defendant Edwards, working on behalf of SWIC, investigated the matter

under the supervision of Defendant Green and other SWIC defendants (Doc. 1, p. 15).  Although Defendant Edwards interviewed several individuals, Plaintiff was not interviewed during the investigation.

Ultimately, Plaintiff was found guilty of a student conduct code violation at SWIC and was banned from "all schools."  He was subjected to a parole compliance check for possession of a firearm[2] (Doc. 1, p. 22).  Despite the fact that the original battery charges were dismissed on March 5, 2013, Plaintiff was re-committed after he pled guilty to the additional aggravated battery charge.

Plaintiff alleges that all Defendants conspired to racially profile and unlawfully arrest him on September 6, 2012, without a warrant and in violation of his rights to due process and equal protection under the law.  This includes the following defendants: (1) City of Belleville; (2) St. Clair County; (3) St. Clair County Sheriff's Department; (4) St. Clair County Sheriff Roger McLean; (5) Unknown St. Clair County Sheriff; (6) St. Clair County State's Attorney Brendan Kelly; (7) City of Sparta; (8) Sparta Police Department; (9) Unknown Sparta Police Chief; (10) Sparta Police Officer Shawn Lukes; (11) Randolph County; (12) Randolph County State's Attorney Jeremy Walker; and (13) City of Red Bud Detective John Brittingham.  Also included are numerous SWIC defendants: (1) SWIC–Red Bud; (2) SWIC–Student Development; (3) SWIC–Department of Public Safety; (4) Melinda Welten (SWIC student); (5) Staci Clayborne (SWIC employee); (6) Sherry Farve (SWIC Human Resources Director); (7) Jennifer Edwards (SWIC public safety officer); and (8) Mark Green (SWIC public safety director).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.  Under § 1915A, the Court is required to promptly screen prisoner

---

[2] No contraband was found during this parole compliance check.

complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).

### Count 1 - Conspiracy to Deprive Plaintiff of Constitutional Rights

Civil conspiracy claims are cognizable under § 1983.  *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002).  According to the Seventh Circuit, "[I]t is enough in pleading a conspiracy merely to indicate the parties, the general purpose, and the approximate date, so that the defendant has notice of what he is charged with."  *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); *see also Swierkiewicza v. Sorema, N.A.*, 534 U.S. 506 (2002); *Hoskins v. Poelstra*, 320 F.3d 761 (7th Cir. 2003).  In his complaint, Plaintiff alleges that Defendants conspired to deprive him of his constitutional rights by racially profiling him, expelling him from school, unlawfully arresting him, and denying him due process and equal protection of the law. At this early stage in litigation, the Court finds that Plaintiff has stated sufficient facts to support his claim that certain defendants conspired to deprive him of his rights under the Fourth[3] and Fourteenth Amendments.

Accordingly, Plaintiff shall be allowed to proceed on **Count 1** against: (1) City of Belleville; (2) St. Clair County Sheriff Roger McLean; (3) St. Clair County State's Attorney Brendan Kelly; (4) City of Sparta; (5) Sparta Police Officer Shawn Lukes; (6) Randolph County State's Attorney Jeremy Walker; (7) City of Red Bud Detective John Brittingham; (8) Melinda Welten; (9) Staci Clayborne; (10) Sherry Farve; (11) Jennifer Edwards; and (12) Mark Green.

Plaintiff's conspiracy claim against all remaining defendants is dismissed.  This includes: (1) St. Clair County Sheriff's Department; (2) St. Clair County; (3) St. Clair County Unknown

---

[3] As explained below, the Court is required to dismiss certain aspects of Plaintiff's Fourth Amendment claim.

Sheriff; (4) Sparta Police Department; (5) Sparta Police Department Unknown Police Chief; (6) Randolph County; (7) SWIC–Red Bud; (8) SWIC–Student Development; and (9) SWIC–Department of Public Safety.  These defendants appear to have been named because of their supervisory role over an employee who committed an unconstitutional act or for a policy, custom, or practice of racial profiling and unlawful arrests.

A supervisor cannot be held liable for the wrongful conduct of an employee in a § 1983 action.  "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'"  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).  *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981).  To the extent that Plaintiff is raising claims based on these defendants' supervisory roles, the claim is dismissed.

Liability may arise where an employee's unconstitutional acts are carried out pursuant to an official custom or policy.  *Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 765 (7th Cir. 2006).  *See also Monell*, 436 U.S. at 694. "The 'official policy' requirement for liability under § 1983 is to 'distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'"  *Estate of Sims ex rel. Sims v. Cnty. of Bureau,* 506 F.3d 509, 515 (7th Cir. 2007) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986)).

In this case, Plaintiff asserts claims against multiple defendants for the same custom or practice of racial profiling or unlawful arrests.  For example, he asserts claims against the City of Sparta, Sparta Police Department, and Sparta Police Chief.  These defendants cannot be held

liable under a *respondeat superior* theory of liability.  Plaintiff's theory of liability instead hinges on a pattern of unlawful arrests and racial profiling.  It is not necessary to separately sue each defendant for the same unconstitutional custom or practice.  The Court has therefore allowed Plaintiff to proceed against one of these defendants, the City of Sparta, on this claim.

The analysis is slightly different for the counties and related defendants.  Plaintiff asserts claims against St. Clair County, St. Clair County Sheriff Roger McLean, St. Clair County Unnamed Sheriff, and St. Clair County State's Attorney Brendan Kelly for participating in a pattern of unlawful arrests and racial profiling.  He asserts a similar claim against Randolph County.  Again, it is not necessary to separately sue each defendant for the same unconstitutional custom or practice.  Moreover, it is not appropriate to sue the counties for the custom or practice of unlawful arrests and racial profiling by the sheriff's department.  Under Illinois law, a county "has no authority to control the sheriff's office."  *Biggerstaff v. Moran*, 284 Ill. App. 3d 196, 199 (1996).  The sheriff is an independently elected constitutional officer who is not an agent or employee of the county.  ILL. CONST. art. 7, § 4; 55 ILCS 5/3-6008; *Moy v. County of Cook*, 640 N.E.2d 926, 931 (Ill. 1994). As such, an Illinois sheriff does not act as a county policymaker.  *Id.*; *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 795 (1997).  Therefore, Plaintiff cannot maintain a § 1983 action against St. Clair or Randolph Counties for policies, customs, or practices that are unrelated to those entities.  *See Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989).  The Court is therefore dismissing St. Clair County and Randolph County.  However, Plaintiff shall be allowed to proceed against St. Clair County Sheriff Roger McLean on this claim.  The unnecessary addition of defendants complicates litigation without adding to Plaintiff's substantive claims or contributing to his ability to seek relief.

## Counts 2 and 3 - Claims Implicating *Heck v. Humphrey*

Plaintiff claims that Defendants violated his Fourth Amendment rights by unlawfully

arresting him **(Count 2)** and re-committing him to prison **(Count 3)**.  The Court must consider these claims in light of *Heck v. Humphrey*, 512 U.S. 477 (1994).  According to the *Heck* doctrine, the Court is required to dismiss any civil action which necessarily implicates the validity of a state court conviction.  *See Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010).  *Heck* holds that "a § 1983 plaintiff seeking damages for an allegedly unconstitutional conviction, imprisonment, or other such harm must initially establish that the conviction has been reversed, expunged, declared invalid, or called into question by the issuance of a federal writ of habeas corpus."  *Smith v. Gomez*, 550 F.3d 613, 616 (7th Cir. 2008) (citing *Heck*, 512 U.S. at 486-87); *see Wallace v. City of Chicago*, 440 F.3d 421, 428 (7th Cir. 2006).  Plaintiff has not alleged that he filed a petition for writ of habeas corpus or otherwise challenged his parole revocation or that the parole revocation was reversed.  Even so, the Seventh Circuit has recognized that "[m]any claims that concern how police conduct searches or arrests are compatible with a conviction.  For example an arrest without probable cause violates the [F]ourth [A]mendment but does not imply the invalidity of a conviction, because courts do not suppress the body of the accused."  *Evans*, 603 F.3d at 363.

## 1.  Unlawful Arrests

In light of this standard, the Court finds at this early stage that Plaintiff has articulated a colorable Fourth Amendment claim against Defendants Lukes and Brittingham for Plaintiff's unlawful arrests **(Count 2)** on September 6, 2012.  He shall also be allowed to proceed against the defendants who issued a warrant for Plaintiff's arrest or arrested him pursuant to a custom or practice of racial profiling or pattern of unlawful arrests, including St. Clair County Sheriff Roger McLean, St. Clair County State's Attorney Brendan Kelly, City of Sparta, City of Belleville, and Randolph County State's Attorney Jeremy Walker.

2.  Unlawful Imprisonment

However, Plaintiff's claim for unlawful imprisonment **(Count 3)** is barred by *Heck*.  This claim clearly implicates the validity of Plaintiff's parole revocation.  Further, Plaintiff's own guilty plea led to his re-commitment.  Because Plaintiff has not successfully challenged and invalidated his 2012 parole revocation in a habeas action, *Heck* precludes any relief for him on his unlawful imprisonment claim under § 1983 or other federal civil rights statutes.  Accordingly, Count 3 shall be dismissed without prejudice.

**Count 4 - Fifth Amendment Claim**

It is not clear what claims Plaintiff attempts to raise under the Fifth Amendment.  Careful review of the complaint suggests that Plaintiff invoked the Fifth Amendment based on Defendant Lukes' failure to give him *Miranda* warnings when taking him into custody twice.   Plaintiff has not articulated a colorable Fifth Amendment claim **(Count 4)** against any defendant on this basis.

Standing alone, the failure to give *Miranda* warnings during a custodial interrogation is not a Fifth Amendment violation.  *Chavez v. Martinez*, 538 U.S. 760, 766-70 (2003).  The government violates a suspect's privilege against self-incrimination only when the government later introduces an unwarned statement into evidence at a pretrial hearing or trial.  *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1026-27 (7th Cir. 2006).  In the complaint, Plaintiff does not allege that he was interrogated at any time during his first arrest on September 6, 2012.  Although Defendant Brittingham interrogated Plaintiff during the second arrest that day, Plaintiff does not allege that Defendant Brittingham failed to administer the *Miranda* warnings--only that Defendant Lukes failed to do so.  Plaintiff does make it clear, however, that Defendant Brittingham failed in his efforts to obtain a confession from Plaintiff.  And as noted above, Plaintiff ultimately pled guilty to one charge, thus there was no trial.  Under the circumstances,

Plaintiff has stated no claim for relief under the Fifth Amendment against Defendants Lukes and

Brittingham, or any other defendant.  Therefore, Count 4 shall be dismissed without prejudice.

### Count 5 - Educational Claims

Plaintiff has also failed to state a colorable cause of action against any of the defendants

for violation of his right to an education **(Count 5)**.  This includes Plaintiff's potential claims

under the First Amendment for violation of his freedom of association and under the Fourteenth

Amendment for violation of his right to due process and equal protection related to his education.

Plaintiff's allegations regarding this claim are sketchy.  Although the Court is obligated to accept

factual allegations as true, some factual allegations may be so sketchy or implausible that they

fail to provide sufficient notice of a plaintiff's claim.  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir.

2009); *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011).  Additionally, Courts "should not

accept as adequate abstract recitations of the elements of a cause of action or conclusory legal

statements." *Id.*

In analyzing Plaintiff's Fourteenth Amendment claim for denial of procedural due

process, the Court must determine: (1) whether Plaintiff was deprived of a protected liberty

interest, and, if so; (2) what process is due.  *Sonnleitner v. York*, 304 F.3d 704, 711 (7th Cir.

2002).  Plaintiff has suggested that two property interests are at stake: (1) an interest in receiving

university process prior to being banned from "all schools;" and (2) an interest in a continued

post-secondary education.   Neither presents a cognizable property interest under the

circumstances of this case.

The Fourteenth Amendment does not protect Plaintiff's interest in receiving the internal

process he seeks.  *Sung Park v. Indiana Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir.

2012) ("[Plaintiff's" interest in a contractually-guaranteed university process is not protected by

the federal Constitution.")  Plaintiff also has no recognized constitutional right to continued

enrollment in a post-secondary education program. *See Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009); *Park v. Indiana Univ. Sch. of Dentistry*, 781 F. Supp. 2d 783, 787-88 (S.D. Ind. 2011) (Lawrence, J.), *aff'd* 692 F.3d 828 (7th Cir. 2012).   Accordingly, Plaintiff's Fourteenth Amendment due process claim, as it relates to his education, shall be dismissed without prejudice.

Although Plaintiff has not asserted a Fourteenth Amendment substantive due process claim as it relates to his education, this potential claim also fails.  Substantive due process bars the state from depriving Plaintiff of a fundamental right through arbitrary action.  The court must identify the interest plaintiff claims to be constitutionally protected and then determine whether history, legal traditions, and practices permit characterization of the interest as "fundamental." *Galdikas v. Fagan*, 342 F.3d 684, 688 (7th Cir. 2003), *overruled on other grounds*, *Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004).  Plaintiff's allegations regarding education do not implicate a fundamental right. The opportunity to receive a post-secondary education has not been recognized as a fundamental right entitled to Fourteenth Amendment protection.  *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-35 (1973) (education is not a fundamental right); *Galdikas*, 342 F.3d at 688-89 (opportunity to receive a post-secondary education not a fundamental right).  Accordingly, Plaintiff has stated no substantive due process claim against defendants based on violation of his educational rights.

Finally, Plaintiff's Fourteenth Amendment equal protection claim also fails.  Plaintiff appears to assert a "class-of-one" equal protection claim, alleging that Defendants disciplined and harassed him in order to expel him from school against his will.  "To state a class-of-one equal protection claim, an individual must allege that he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Swanson v. City of Chetek*, 2013 WL 3018926, at *3 (7th Cir. 2013) (quoting *Vill. of*

11

*Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)).   First, the allegations of harassment and carrying a weapon, on their face, provided a rational basis for the actions of the SWIC defendants.   In addition, Plaintiff does not point to any case of another similarly situated individual who received more favorable treatment than he did.  *See Geinosky v. City of Chicago,* 675 F.3d 743, 748 (7th Cir. 2012).  The complaint thus fails to state an equal protection claim.

Plaintiff's potential claim for violation of his right to freely associate falls, along with his educational claim.

Accordingly, the Court shall dismiss Count 5 without prejudice for failure to state a claim upon which relief can be granted.

### Count 6 - Intentional Infliction of Emotional Distress

The Court shall exercise supplemental jurisdiction over Plaintiff's state law claim for intentional infliction of emotional distress (Count 6).   Accordingly, he shall be allowed to proceed on this claim.

### Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge **Philip M. Frazier** for further consideration.

Plaintiff's motion to supplement complaint (Doc. 9), in which Plaintiff seeks permission to insert an additional page into his motion for recruitment of counsel, is **GRANTED**.

The Court construes Plaintiff's motion to amend/correct compensatory damages and punitive damages (Doc. 7) as a motion for leave to file amended complaint.  Plaintiff's motion seeks to amend only one aspect of his complaint, i.e., his claim for relief.  However, an amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004).   The Court will not accept piecemeal amendments to the original complaint.   Thus, the amended

complaint must stand on its own, without reference to any other pleading.  Because Plaintiff's amended complaint would contain only a request for relief, without the original claims and exhibits, his motion for leave to file an amended complaint (Doc. 7) is **DENIED**.  Should Plaintiff wish to file an amended complaint, he must file a pleading that stands on its own without reference to the original complaint.  Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.

**Disposition**

COUNTS **3, 4** and **5** are **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted.

**DEFENDANTS ST. CLAIR COUNTY SHERIFF'S DEPARTMENT, ST. CLAIR COUNTY, ST. CLAIR COUNTY UNKNOWN SHERIFF, RANDOLPH COUNTY, SPARTA POLICE DEPARTMENT, SPARTA POLICE DEPARTMENT UNKNOWN POLICE CHIEF, SWIC–RED BUD, SWIC–STUDENT DEVELOPMENT,** and **SWIC– DEPARTMENT OF PUBLIC SAFETY** are dismissed from this action without prejudice.

As to **COUNTS 1, 2,** and **6,** the Clerk of Court shall prepare for **DEFENDANTS CITY OF BELLEVILLE, CITY OF SPARTA, ST. CLAIR COUNTY SHERIFF ROGER McLEAN, LUKES, WALKER, BRITTINGHAM, WELTEN, CLAYBORNE, FARVE, EDWARDS, KELLY** and **GREEN**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If any Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent

authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings, including a decision on Plaintiff's motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 15, 2013**

s/J. Phil Gilbert
**U.S. District Judge**
